AMOS E. REED *vs.* INHABITANTS OF DEERFIELD.

The court cannot take from the jury a case in which the evidence is conflicting, and the testimony of one or more witnesses, if believed, would, taken by itself, support a verdict. This court cannot decide, on a bill of exceptions, that driving a safe horse, with a tight rein, at night, at his usual speed of ten miles an hour, by a skilful driver, over a wide and level road, with which he is familiar, and over which he has passed in safety within an hour without perceiving any obstruction, is such a want of ordinary care as to prevent a recovery for an injury sustained from a defective highway.

GRAY, J.  This is an action of tort to recover for injuries to the plaintiff's person, and to his mare, wagon and harness, occasioned by a defect in the highway leading from Deerfield to Greenfield. The existence of the defect and the defendants' liability to repair it are not denied, and the defence is rested upon the plaintiff's want of ordinary care.

The undisputed facts appearing at the trial were as follows : At the place of the accident the road-bed was twenty-five or thirty feet wide, and nearly level, so that travel usually passed over its whole extent, and there were ordinarily two, and sometimes three beaten paths. The day before the accident, the surveyor of highways had been repairing this way by placing earth on the centre and spreading it so as to round up the road. During the progress of the work, he had placed rails across each side of the way, with one end resting on the fence and the other on the ground within the road-bed, so as to turn the travel into the centre ; and he left some of the rails in that position on the night of the accident. The plaintiff, with James Foster, who

had been working for him all day, left his house in Greenfield after sunset, and drove to Deerfield, a distance of three miles; he took a glass of gin with Foster at Deerfield, left him there, and returned immediately over the same road, and on the way back drove his mare against one of the rails; and the wagon was thus upset and broken, and the plaintiff and his mare were injured. It was a dark night, and had become very dark before the accident. The natural gait of the plaintiff's mare was from seven to ten miles an hour. The evidence on both sides tended to show that the plaintiff was a competent and skilful driver, but was in the habit of driving very fast.

The plaintiff testified that it was an hour after sunset and quite dark when he and Foster started for Deerfield, and they were twenty minutes going over; that he was familiar with the road, and had travelled it very often; that he thought, as he went over, that there had been repairs on the road, and his wheels rolled hard, but his mare "went right along through," and he saw nothing of the rails; that on his return, about a dozen rods before reaching the place of the accident, he met a team; that his mare saw it, and turned to the right, and after passing it he drove to the left, on the south side of the road, as he always did, because he could see better on account of the trees; that he struck a rail and went over; that the mare was anxious to come home, and he was driving ten miles an hour, which was her usual rate; that he was holding her in hand, and driving with a tight rein, as he always did; that he spoke to the mare as he went over, and the next moment found himself on his belly in the road; that he had his reins twisted about his fingers, and, as the mare left the wagon, one of the fingers on his left hand was pulled out of joint and badly abraded; that this was the first he knew of the rails being there, and it was too dark to see them unless he was looking on purpose; that he was not consciously under the influence of liquor at the time of the accident; and that his mare could trot a mile in four minutes, but was safe and gentle, and had been driven by his wife and other women.

There was some evidence tending to corroborate the plaintiff's

testimony; and also evidence contradicting it on all mate-
rial points. But the question whether it was thus overthrown
could not be raised upon the defendants' motion for an instruc-
tion to the jury that there was no evidence of due care upon
the plaintiff's part which would warrant a verdict in his favor.
It was not a question of the legal sufficiency of the whole evi-
dence in the case, but of the weight of conflicting evidence.
The line of distinction is well established, although it is some-
times difficult to determine upon which side of it a case falls.
*Parks* v. *Ross*, 11 How. (U. S.) 373. *Schuchardt* v. *Allens*, 1
Wallace, 369–371. *Denny* v. *Williams*, 5 Allen, 4, 5. *Snow* v.
*Housatonic Railroad*, *ante*, 448. Where the whole evidence
introduced by the plaintiff, if believed by the jury, is so insuffi-
cient to support a verdict that the court would not permit one
to stand, it is the duty of the court to instruct the jury, as mat-
ter of law, that there is not sufficient evidence to warrant a ver-
dict for the plaintiff. But where the evidence is conflicting, and
the testimony of one or more witnesses, if thought by the jury
to be credible and accurate, would, taken by itself, support a
verdict, the case cannot be taken from the jury; for the court
cannot adjudge, as matter of law, that one witness, or set of
witnesses, is to be believed, rather than another　That ques-
tion is not of law, but of fact, and can only be entertained upon
a motion for a new trial on the ground that the verdict is
against the weight of evidence; and in this case has been so
heard and decided by the judge presiding in the superior court,
and is not now before us.

The question remains whether the plaintiff's own testimony
was sufficient evidence of ordinary care on his part to be sub-
mitted to the jury. Its sufficiency is objected to principally on
two grounds; his previous knowledge that the road was un-
dergoing repair, and the speed at which he was driving at the
time of the accident. But the plaintiff expressly testified that
he did not see the rails ; and his knowledge of the state of
the road was but one circumstance, to be weighed with the
other evidence in the case by the jury, who might well con-
clude that knowledge that the town was repairing the centre,

did not require a traveller to presume that it had unnecessarily barricaded the sides, of the highway. And the court cannot decide, as matter of law, that a skilful and careful driver, firmly holding the reins, and driving a safe horse at his usual speed at night over a wide and level country road, with which he is familiar, and over which he has passed within an hour in safety and without perceiving any obstruction, is conclusively shown to have been wanting in ordinary care, by the fact that this speed was ten miles an hour.

In the case most relied on by the defendants, the plaintiff's own testimony showed that the defect was manifest to every one and well known to him, and that he paid no attention to his driving ; it did not even show that he was driving with a tight rein. *Gilman* v. *Deerfield*, 16 Gray, . These facts proved a want of ordinary care on his part, and distinguish that case from the present. *Exceptions overruled.*

*J. Wells*, for the defendants, cited *Winn* v. *Lowell*, 1 Allen, 177 ; *Smith* v. *Lowell*, 6 Allen, 39 ; *Holly* v. *Boston Gas Light Co.* 8 Gray, 123 ; *Spofford* v. *Harlow*, 3 Allen, 176 ; *Gilman* v. *Deerfield*, 16 Gray, .

*P. C. Bacon*, for the plaintiff.